Breitel, J. (dissenting).
As with the defendant in People v. Masiello (28 N Y 2d 287) I have no doubt that the defendant in this case would have refused to testify even if granted full transactional immunity. In each case the defendant was advised by a competent lawyer and was not misled. Be that as it may, that is not the issue, as explained in the Masiello case, under requirements laid down in People v. De Feo (308 N. Y. 595) and by the United States Supreme Court.
The Masiello case restated two old rules, and applied a third one. The first was that the immunity statutes were not self-executing, following the mandate of the De Feo case (supra) which reversed the Appellate Division for holding otherwise *25 (see 284 App. Div. 622, 629-630). The second rule was that in granting immunity the prosecutor or granting authority must unequivocally advise the witness that “he may not be prosecuted criminally concerning any transaction about which he might be questioned ” (28 N Y 2d, at p. 291). Repetitively, and also by italics, it was emphasized that these words or their unambiguous equivalent would suffice. A third rule required by the United States Supreme Court, and suggested in some New York cases, was that the state of mind of the witness was irrelevant.
With this preliminary it is necessary only to disclose from the record the advice or directions given to the defendant in this case when he was a witness before the Grand Jury. After refusing to testify, and the Grand Jury having voted to grant him immunity, defendant was instructed as follows:
“ Q. Now you can no longer incriminate yourself. This Grand Jury is ready to confer immunity upon you, which means that, as your attorney undoubtedly explained to you, that whatever answers you may make to this question will immunize you from prosecution for whatever crime or crimes your answers might disclose. You can no longer incriminate yourself and therefore you are legally obligated to answer the question. Refusal to answer the question after having been offered immunity or being directed through the Grand Jury by the Foreman pursuant to the District Attorney’s request might provide a basis for prosecution for the crime of criminal contempt. ’ ’
* * *
‘ ‘ Mr. Mulligan, you appreciate from that question put to you by Mr. Yasgur [one of the assistant district attorneys present before the grand jury] that this Grand Jury is extremely desirous of obtaining information or testimony from you concerning certain corrupt police officials. Your answer to the question will in no way incriminate you because you have been receiving immunity, should you answer the question. Do you still refuse to answer the question? ”
* # *
“ You appreciate your answer can no longer incriminate you because you will be getting immunity from prosecution for *26 whatever crimes your testimony may disclose? Do you still refuse to answer ? ” (Emphasis supplied.)
More was said but it was either repetition of what had been stated or, if different, served only to confuse (as conflicting statements had in the Masiello case, supra, or in People v. Tramunti, decided herewith).
The point is that the defendant as a witness was being offered an immunity for crimes that his testimony might reveal, a quite different matter from being offered immunity for any crimes arising from any transactions about which he might be questioned. This the Masiello case tried to make clear only a little over two months ago. For is the difference a small one. Whether answers are in fact inculpatory or whether questions, if answered, might inculpate, are often subtle matters and one makes judgments at his peril. On the other hand, there is no lack of clarity in the assertion that one will be immune from prosecution for any crimes involved in transactions about which one has been questioned. The content of the question, not that of the answer given, determines the scope of immunity. Moreover, the last formulation is a fair paraphrase of the statute, which in defining immunity refers to any ‘ ‘ transaction * * * concerning which * * * [the witness] gave answer or produced evidence ”, inculpatory in fact or not, whether possibly inculpatory or not (Code Grim. Pro., § 619-c).*
Concrete illustrations may help. In investigating an extortion or bribe, a question asked of a witness whether he knew the victim of the crime might or might not reveal or tend to reveal a crime. But if the witness maintains that he never knew or met the victim, his answer denying acquaintance with the victim might be very inculpatory indeed—in that sense a revelation of complicity—if there were independent proof that they had known one another. Or, in the context of a robbery or homicide, a negative but false answer to a question whether the witness had been at a certain address at a certain time, might or might not ‘ ‘ reveal ’ ’ complicity in the crime, just as much *27 or even more than an “ admission ” that he had been at that address on the date and at the time in question. In short, if the witness in his answer denies even an innocent connection with the transaction about which he is questioned, that denial may be highly incriminating if the prosecution has independent proof contradicting the answer. Yet it may be said that the witness ’ answer had not ‘ ‘ revealed ’ ’ any crime. Most witnesses would think that denials of complicity or connection are not revelatory of crime, as in a certain sense of the language they are not.
Transactional immunity to be effective must be complete and not depend either on the quality of the answers given or whether, speculatively, one kind of answer or another “ might ” incriminate. Transactional immunity imports complete immunity from prosecution for the substantive crimes being investigated. The liar or the evader, despite the grant of immunity, is subject either to a perjury or contempt prosecution.
In the present case, the court, in its zeal to hold an allegedly unworthy culprit, is engendering a new confusion, and, what is worse, inadvertently treating one alleged culprit more rigorously than it had another a short time ago in the Masiello case. I would prefer to apply the rules more equitably and more plainly even at a slight delay in the prosecutor’s already protracted investigation. After all, his remedy is readily at hand, namely, to bring the defendant again before the Grand Jury, advise him in the simplest terms of the unequivocal grant of transactional immunity, either in the words of the statute, or by the formulation in the Masiello case, or by some brief accurate paraphrase, and see if he still refuses to testify. There are no problems of double jeopardy.
Accordingly, I dissent and vote to affirm the order dismissing the indictment.
Judges Burke, Scileppi, Bergan and Gibson concur with Chief Judge Fuld; Judge Breitel dissents and votes to affirm in a separate opinion in which Judge Jasen concurs.
Order reversed, etc.

 A reference in Matter of Gold v. Menna (25 N Y 2d 475, 481) to crimes which might be revealed by the witness’ testimony is distorted by being torn out of context. In its context the reference was to the a fortiori situation of a witness receiving immunity for crimes revealed. Of course, the opinion did not purport to use the phrase as a limitation on the grant of immunity.